# EXHIBIT A

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

| | |
|---|---|
| **KATHLEEN DIAL, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MARGARET P. CALDWELL,** individually and on behalf of all others similarly situated | **CASE NO.** <br><br> **JURY TRIAL DEMANDED** |
| Plaintiff, | |
| v. | |
| **FUEGO SMOKE & VAPE LLC, MANKI INVESTMENTS LLC, HYWAZE LLC, OUTER LIMITS SALES TWO LLC, A&A SMOKE SHOP LLC, PUFFZILLA LLC, and GIVINGO LLC,** individually and as representatives of a defendant class, | |
| and | |
| **PLUTO BRANDS, LLC, GALAXY GAS, LLC, DIMO HEMP LLC, FUSION INTERNATIONAL TRADING, LLC, UNITED BRANDS, INC., SWEET AND SOUR HOLDINGS LLC, MONSTER GAS, INC., and BAKING BAD GROUP, INC.** | |
| Defendants | |

1.     Plaintiff, Kathleen Dial, as the personal representative of the Estate of Margaret P. Caldwell ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against Defendants Fuego Smoke & Vape LLC, Manki Investments LLC, Hywaze LLC, Outer Limits Sales Two LLC, A&A Smoke Shop, Puffzilla LLC, and Givingo LLC (collectively "Smoke Shop Defendants"), individually, and as

representatives of a defendant class, and against Pluto Brands, LLC Galaxy Gas, LLC (together, "Galaxy"), Dimo Hemp LLC and Fusion International Trading, LLC (together, "Looper") United Brands, Inc., Sweet And Sour Holdings LLC, Monster Gas, Inc., and Baking Bad Group, Inc. (together, "Manufacturer Defendants," and together with Smoke Shop Defendants, "Defendants"), and alleges as follows:

## **INTRODUCTION**

2.       This putative class action arises from Manufacturer Defendants' manufacturing, importation and marketing, and Smoke Shop Defendants' retailing of nitrous oxide canisters and accessories for inhalation and recreational use ("N-O Products") to the public. The sale of N-O Products to consumers, including marketing to minors and other vulnerable populations, has resulted in a veritable national health crisis.

3.       Manufacturer Defendants manufacture, import and market, and Smoke Shop Defendants sell, N-O Products specifically to consumers who are likely to use N-O Products recreationally, by inhaling the nitrous oxide gas and abusing it as a recreational drug.

4.       Manufacturer Defendants' products come in enticing flavors such as "mango smoothie", "vanilla raspberry", and in package sizes that make them impractical for use in the kitchen, but consistent with tobacco, vaping and other products consumed through inhalation.

5.       Most importantly, N-O Products are distributed through smoke shops, such as Smoke Shop Defendants, rather than restaurant supply stores, betraying Manufacturer Defendants' true intent in marketing these items for inhalation and use as a recreational drug, rather than cooking. It cannot be argued that the sale of N-O Products through smoke shops is for culinary purposes. A smoke shop, which includes "headshops," by definition is a retailer selling products for inhalation and smoking equipment.

6.      Manufacturer Defendants also market their N-O Products heavily on social media, including by engaging private social media influencers, a practice inconsistent with selling either medical or culinary products.  Smoke Shop Defendants then sell N-O Products to their patrons, knowing full well they are not seeking these items to cook, but rather to abuse as a recreational drug.  In short, Defendants knowingly manufacture and distribute products that result in addiction and cause grievous bodily harm to the public.

7.      By bringing this action, Plaintiff and Class Members seek to: (i) remedy Manufacturer Defendants' past improper and unlawful conduct by recovering damages to which Plaintiffs and Class Members are rightfully entitled; and (ii) enjoin Smoke Shop Defendants and other Defendant Class Members from selling N-O Products.

## **PARTIES**

8.      Margaret P. Caldwell, deceased ("Margaret"), was at all times relevant to this action a citizen of Florida, residing in Lake County, Florida.  Margaret was enticed to purchase N-O Products by Manufacturer Defendants' advertising which portrayed them as visually attractive and safe to use.  Margaret purchased N-O Products at each of the Smoke Shop Defendants.  Margaret became addicted to N-O Products, suffered severe health consequences, and ultimately succumbed to her addiction.  This action is brought by the personal representative of Margaret's estate.

9.      Defendant Fuego Smoke & Vape LLC is a retailer of tobacco products and accessories, operating a retail location under the name "Fuego Smoke & Vape", at 2575 State Rte 50, #B, Clermont, FL.  Defendant Fuego Smoke & Vape LLC sold N-O Products to Margaret.

10.     Defendant Manki Investments LLC is a retailer of tobacco products and accessories, operating, among others, a retail location under the name "Just Smoke," at 13809

County Rd 455 #102, Clermont, FL 34711. Defendant Manki Investments LLC sold N-O Products to Margaret.

11.     Defendant Hywaze LLC is a retailer of tobacco products and accessories, operating a retail location under the name "Hywaze Smoke Shop", at 663 SR 50, Clermont, FL. Defendant Hywaze LLC sold N-O Products to Margaret.

12.     Defendant Outer Limits Sales Two LLC is a retailer of tobacco products and accessories, operating a retail location under the name "Outer Limits Smoke Shop", at 12348 Roper Blvd, Clermont, Florida. Defendant Outer Limits Sales Two LLC sold N-O Products to Margaret.

13.     Defendant A&A Smoke Shop is a retailer of tobacco products and accessories, operating a retail location under the name "Clermont Smoke Shop", at 4420 S Hwy 27, #7, Clermont, FL, 34711. Defendant A&A Smoke Shop sold N-O Products to Margaret.

14.     Defendant Puffzilla LLC is a retailer of tobacco products and accessories, operating a retail location under the name "Puffzilla Smoke Shop" in Orange County, Florida, at 9000 S Orange Blossom Trail Suite C, Orlando, FL 32809. Defendant Puffzilla LLC sold N-O Products to Margaret.

15.     Defendant Givingo LLC is a retailer of tobacco products and accessories in Orange County, Florida, operating a retail location under the name "Moe's Smoke Shop", at 4079 S. Goldenrod Road, Orlando, FL 32822. Defendant Givingo LLC sold N-O Products to Margaret.

16.     Defendant Galaxy Gas LLC is a Georgia limited liability company, with its principal address registered as: PO Box 2630, Kennesaw, GA, 30156, USA. At all material

times, Galaxy Gas LLC manufactured, designed, distributed to tobacco and marijuana retailers, sold directly to consumers, and oversaw the marketing of N-O Products.

17.     Defendant Pluto Brands, LLC is a Delaware corporation and the owner of Galaxy Gas LLC.[1]

18.     Defendant Dimo Hemp LLC ("Dimo") is a distributor of CBD products, vape products and nitrous oxide tanks under the brand "Looper Whip".  Looper is headquartered at: 8549 Wilshire Blvd, #5134, Beverly Hills, CA 90211.

19.     Defendant Fusion International Trading, LLC (together with Dimo, "Looper") is the manufacturer of nitrous oxide tanks under the brand "Looper Whip".  Fusion International Trading Co. Ltd. is located in Shanghai, China, at the address: RM1314, NO 258 Shanghai, SH, China, 201102. It also has a corporate office in Los Angeles, California.

20.     Defendant United Brands, Inc. is a manufacturer of CBD products, vape products and nitrous oxide tanks.  United Brands, Inc. is headquartered at: 120 Sierra Azule, Los Gatos, CA 95032.

21.     Defendant Sweet and Sour Holdings, LLC is a manufacturer of CBD products, vape products and nitrous oxide tanks under the brand "Cosmic Gas."  It is headquartered at: 800 N. Rainbow Blvd, Ste 208, Las Vegas, NV 89107.

22.     Defendant Monster Gas, Inc. is a manufacturer of CBD products, vape products and nitrous oxide tanks. It is headquartered at: 9171 Wilshire Blvd, Ste 500 B4, Beverly Hills, CA 90210.

---

[1] Alex Clark, "The 'Galaxy Gas' trend whipping up controversy on social media", CBS News (October 10, 2024), https://www.cbsnews.com/news/galaxy-gas-nitrous-oxide-social-media-controversy/ (last accessed January 11, 2025).

23.     Defendant Baking Bad Group, Inc. is a manufacturer of CBD products, vape products and nitrous oxide tanks.  It is headquartered at: Suite 16289, 1635 Market St, Philadelphia, PA 19103.

## JURISDICTION AND VENUE

24.     The Court has subject matter jurisdiction over Plaintiffs' claims under Florida Stat.§26.012 and §86.011. This Court has jurisdiction over this dispute because this complaint seeks damages over $50,000.00, exclusive of interest and attorneys' fees.

25.     The Court has personal jurisdiction over each Defendant because under Florida Stat. §48.193, each Defendant personally or through its agents operated, conducted, engaged in, or carried on a business or business venture in Florida; committed tortious acts in Florida; the Smoke Shop Defendants maintain retail premises in Florida, and because each Defendant engaged in significant business activity within Florida.

26.     Venue is proper in Orange County under Florida Stat. § 47.011 and § 47.051 because Defendants each do business in this county, the causes of action accrued in this county.

## STATEMENT OF FACTS

27.     First synthesized in 1772 by the English chemist Joseph Priestly, nitrous oxide, sometimes known as "laughing gas", is an old drug.  It has a number of legitimate uses, including for anesthesia in medicine, in the automotive industry, and as a whipping agent in

cooking. It is also a popular but dangerous recreational drug. Its popularity was reignited by social media.

28.     Nitrous oxide is a popular recreational drug because, when inhaled, it is known for its dissociative effects. Users may also feel euphoria or the sensation of floating.[2] However, the recreational use of nitrous oxide is associated with addiction and a variety of debilitating and fatal conditions. Prolonged use of nitrous oxide can have disabling neurological sequelae due to functional inactivation of vitamin B12.[3] Depletion of the B12 supply can cause dementia, imbalance and paralysis.[4]

29.     Frequent, high-dose use of nitrous oxide displaces oxygen available in the lungs, which can result in asphyxiation that leads to brain damage or death.[5] This concern is especially acute when the gas is misused or abused by individuals who are neither trained in safe handling, nor possess appropriate clinical delivery systems or oxygen monitoring sensors.

30.     A recent CBS News report quoted Dr. Madeline Renny, a pediatric emergency medicine physician at Mount Sinai Health System in New York City describing nitrous oxide's effect on the body as follows: "There can be a range of symptoms, from headache, lightheadedness, palpitations, passing out and then, in some cases, death." Dr. Renny warned

---

[2] Lindsi Filippi, BA and Nicholas Pratt, MD, RN, "Galaxy Gas: The Dangerous Viral Trend", Psychiatric Times (September 24, 2024), https://www.psychiatrictimes.com/view/galaxy-gas-the-dangerous-viral-trend (last accessed January 11, 2025).
[3] Alexander G. Thompson, et al., "Whippits, nitrous oxide and the dangers of legal highs", Pract Neurol. 2015 Jun;15(3):207–209 (last accessed January 11, 2025).
[4] YouTube, "Paralyzed by Addiction: A Young Woman's Fight with Nitrous Oxide Abuse – Supplying a High – Part Two", https://www.youtube.com/watch?v=QBv-lnMqfGo (last accessed June 23, 2025).
[5] Madeline Hodgman-Korth, "Nitrous Oxide (Whippet) Abuse, Side Effects & Treatment", American Addiction Centers (December 31, 2024), https://americanaddictioncenters.org/inhalant-abuse/nitrous-oxide-whippets (last accessed January 12, 2025).

that even a single use of the nitrous oxide gas as a recreational drug could lead to significant health concerns or even prove fatal.[6]

31.     In the U.K., a college student who inhaled two to three "big bottles" of nitrous oxide a day died as a result of "long-term complications of nitrous oxide use". In reporting on this case, the BBC quoted senior coroner Heidi Connor who emphasized that the student's death "has highlighted how hugely dangerous it is to use nitrous oxide."[7]

32.     Due to flashy marketing aimed at youth and other vulnerable populations, nitrous oxide's popularity as a recreational drug is growing. The market for nitrous oxide is projected to reach 3.19 billion dollars by 2033.[8]

33.     As a result of Manufacturing Defendant Galaxy's prominent position in the N-O Product market, all nitrous oxide products consumed as recreational drugs are sometimes colloquially referred to as "Galaxy Gas." According to the *Psychiatric Times*, "[s]earching for Galaxy Gas on popular social media platforms such as TikTok, Instagram, and YouTube reveals posts with millions of interactions."[9]

34.     The availability of different flavors, in particular, makes N-O Products appealing to kids, according to Dr. Gail Saltz, a clinical associate professor of psychiatry at Weill Cornell Medical College at Cornell University.[10] Tulane University Professor Patrick Bordnick, who

---

[6] Alex Clark, "The 'Galaxy Gas' trend whipping up controversy on social media", CBS News (October 10, 2024), https://www.cbsnews.com/news/galaxy-gas-nitrous-oxide-social-media-controversy/ (last accessed January 11, 2025).

[7] "Laughing gas abuse caused student's death – Berkshire coroner" (April 10, 2024), https://www.bbc.com/news/uk-england-berkshire-68783880 (last accessed January 11, 2025).

[8] "The Growing Problem in the Nitrous Oxide Industry", Youtube, https://www.youtube.com/watch?v=o5lz4v-Z0zY (last accessed January 23, 2025).

[9] Lindsi Filippi, BA and Nicholas Pratt, MD, RN, "Galaxy Gas: The Dangerous Viral Trend", Psychiatric Times (September 24, 2024), https://www.psychiatrictimes.com/view/galaxy-gas-the-dangerous-viral-trend (last accessed January 11, 2025).

[10] Kristen Rogers, "Kids are inhaling 'Galaxy Gas' to get high. Here's what parents should know." (September 25, 2024), ABC7 News, https://abc7.com/post/nitrous-oxide-galaxy-gas-kids-are-inhaling-products-whipped-cream-chargers-sold-company-get-high/15344621/ (last accessed January 11, 2025).

researches substance addiction, says employing colorful designs and flavors such as "cotton candy" and "blue raspberry is a marketing effort aimed at catching the attention of young people, and creates a false idea "that this isn't a harmful thing. [...] We're creating flavors and packaging and things that clearly target non-chefs."[11]

35.    Nitrous oxide abuse has been "rapidly rising" throughout the United States and the United Kingdom, according to a March 2018 study. Among people ages 16 to 24 in Britain - where possession is now illegal - nitrous oxide use was second only to cannabis in 2020.  A similar spike was observed in the Netherlands, leading to a rising number of young people arriving at the hospital with neurological complaints.[12]  In the U.S., in 2018, about 12.5 million Americans over age 12 reported having ever used nitrous oxide.  This number rose to nearly 14 million in 2022.[13]

36.    In addition, recreational nitrous oxide consumption leads to a variety of deadly accidents. In 2023, a Missouri jury found United Brands, a nitrous oxide manufacturer, liable for conspiring to sell nitrous oxide as a drug. The company was ordered to pay $720 million to the family of Marissa Politte, a young woman killed by a driver intoxicated on nitrous oxide, for her wrongful death.[14]

37.    Perhaps most concerning, Manufacturer Defendants now market their products in large size packages, some exceeding 1 liter, which is inconsistent with any culinary use (but

---

[11] Rachel Hale, "College kids, an old drug, and why it's everywhere again" USA Today (January 14, 2025), https://www.usatoday.com/story/life/health-wellness/2025/01/14/why-this-viral-college-drug-trend-is-so-dangerous/77676984007/ (last accessed on January 16, 2025).
[12] Id.
[13] Amogh Dimri, "The Illegal Drug at Every Corner Store", *The Atlantic*, (February 3, 2025), https://www.theatlantic.com/ideas/archive/2025/02/nitrous-oxide-drug-loophole/681532/?gift=BcDsg0-eifNnEYjlx9oWdv3HE6caBHw2FJvC2-4OFw8 (last accessed on February 4, 2025).
[14] AP, "Missouri jury awards $745 million in death of woman struck by driver who used inhalants" (September 11, 2023), https://www.wjhl.com/news/national/ap-missouri-jury-awards-745-million-in-death-of-woman-struck-by-driver-who-used-inhalants/ (last accessed on February 4, 2025).

consistent with recreational drug use). When confronted with this inconsistency by a CBS interviewer, Megan Paquin, a spokesperson for Defendant Galaxy, stated that the large-volume N-O Products were "intended as an 'erotic culinary lubricant' and that some people may require that much for their purposes."[15] In truth, Manufacturer Defendants manufacture and market large-volume N-O Products in order to facilitate the addiction through inhalation of such products among its customers.

38.     Notably, Fla. Stat. §877.111(4) makes it a felony to knowingly distribute or sell more than 16 grams of nitrous oxide. Most, if not all, of the purchases Margaret made were of products that contained more than 16 grams of nitrous oxide. Furthermore, this statutory limitation does not apply on a per-canister basis, but rather in the aggregate. Therefore, distributing or selling a box of canisters which, in the aggregate, contain more than 16 grams of nitrous oxide, which each of Defendants has done, is a felony.

39.     It is also unlawful, in Florida, to misbrand or adulterate any drug device, or cosmetic, or otherwise render it unfit for human or animal use. Fla. Stat. §499.005(1) and (2). In selling N-O Products in large canisters, with added food flavors and colorful packaging, Manufacturer Defendants misbranded and adulterated nitrous oxide gas, a dangerous chemical, and attempted to present it as a food additive, when it is in fact a dangerous and addictive drug consumed by inhalation. Selling N-O Products in large canisters of more than 16 grams renders them unfit for human use.

40.     Manufacturer Defendants choose to distribute their products through smoke shops, where they are sold alongside tobacco, synthetic marijuana and/or vaping supplies and

---

[15] Alex Clark, "The 'Galaxy Gas' trend whipping up controversy on social media", CBS News (October 10, 2024), https://www.cbsnews.com/news/galaxy-gas-nitrous-oxide-social-media-controversy/ (last accessed January 11, 2025).

paraphernalia and explicitly marketed to recreational users for inhalation rather than cooking. According to 11Alive, an Atlanta news station, "[Defendant Galaxy] also created flavored Nitrogen Oxide, which is sold in a variety of containers. You only have to be 18 to buy Nitrogen Oxide, and you can find it in vape shops and even convenience stores. On Thursday, 11Alive found it in a local gas station in the same case as vapes."[16]

41.    The visually attractive designs, along with overwhelming online popularity[17] of Manufacturer Defendants' products attracted the attention of celebrities, including singer SZA, who tweeted about its impact on black children in particular, referring to Manufacturer Defendants' "childlike designs and marketing":

"Sorry to be old n annoying but.. Is no one gonna talk about how galaxy gas came out of no where and is being MASS marketed to black children? the government is doing NOTHING ? .. since when are we selling whip its at the store ???? Somebody protect the children," she wrote. "**Something about the childlike designs and marketing is so spooky like .. stars and bright colors? you tryna entice the kids on purpose?**"[18] (Emphasis added).

42.    In short, Manufacturer Defendants manufacture or import, and then market and sell, and Smoke Shop Defendants retail N-O Products which are explicitly aimed at recreational users, promoted for their potential to produce a "high" when inhaled. These products have caused widespread addiction, death and severe bodily harm, and have resulted in a veritable public health crisis.

---

[16] Cody Alcorn, "Social media amplifying dangerous trend of huffing Galaxy Gas among young people", 11Alive, https://www.11alive.com/article/news/local/social-media-trend-huffing-galaxy-gas-young-people-whippets/85-f3a032ae-e9f2-45e5-ab8d-05b6d341e9f2 (last accessed January 11, 2025).
[17] Bruce Y. Lee, "What Is Galaxy Gas? Here Is a Dangerous Trend Among Young People" Forbes (February 1, 2025), https://www.forbes.com/sites/brucelee/2025/02/01/what-is-galaxy-gas-here-is-a-dangerous-trend-among-young-people/ (last accessed on February 2, 2025).
[18] https://x.com/sza/status/1836963408152862836.  See also: Paige Gawley, "Teens on TikTok Are Using an Unexpected Device to Get High", Vice (September 22, 2024), https://www.vice.com/en/article/teens-on-tiktok-are-showing-off-a-new-way-to-get-high/ (last accessed January 11, 2025).

**Florida Smoke Shops Are Numerous and Violations Abound**

43.     Florida has a staggering number of smoke shops, and numerous violations of criminal statutes and other regulations governing their operation.

44.     Floridians spent some $410 million in "disposables" (vape products) alone, nearly 10 times more than New York, a state of roughly similar population size.[19] As of December 1, 2024, Florida had a staggering 4974 smoke shops,[20] of which some  2523 sold "vaping" products.[21]

45.     As can be expected with such a large industry, violations of laws governing the sales of tobacco and related products are frequent.  For instance, in September 2024, "24K Miami," a smoke shop in Pembroke Park, Florida, closed its doors after it was discovered to be selling illegal items, including marijuana above the permitted concentration limit.  Police seized illegal items, including mushrooms, gummies, chocolate bars and other candies.[22]

46.     In another example of this trend, the sheriff of Volusia County sent an undercover deputy to 17 stores in Daytona Beach, Edgewater and other local communities.  Nine of those stores sold nicotine vapes to the undercover deputy without requesting identification or asking their age.[23] Two years earlier, in another undercover operation, each of the 17 locations targeted

---

[19] Drew Wilson, "Florida Is No. 1 in vape sales, so why aren't retailers celebrating?" Florida Politics (May 9, 2024), https://floridapolitics.com/archives/673521-florida-is-no-1-in-vape-sales-so-why-arent-retailers-celebrating/ (last accessed on January 18, 2025).
[20] Smartscrapers, "List of Tobacco shops in Florida", https://rentechdigital.com/smartscraper/business-report-details/united-states/list-of-tobacco-shops-in-florida (last accessed on January 18, 2025).
[21] Smartscrapers, "List of Vaporizer stores in Florida", https://rentechdigital.com/smartscraper/business-report-details/united-states/list-of-vaporizer-stores-in-florida (last accessed on January 18, 2025).
[22] Kevin Boulandier, "Police: Pembroke Park smoke shop sold marijuana items that went over legal limit" (September 20, 2024), https://wsvn.com/news/local/broward/police-pembroke-park-smoke-shop-sold-marijuana-items-that-went-over-legal-limit/ (last accessed on January 18, 2025).
[23] Volusia Sheriff, "Underage Sale Violations Found at Several East Volusia Vape Stores" (April 15, 2024), https://www.volusiasheriff.gov/news/volusia-county-sheriff/underage-sale-violations-found-at-several-east-volusia-vape-stores.stml (last accessed on January 19, 2025).

for enforcement sold either alcohol or nicotine products to an undercover, underage buyer.[24]

Sarasota County Sheriff likewise "cited a number of stores for selling to teens."[25]  The Unified

County Sheriff's Office in Florida has received information that a tobacco shop named "Smoke

Paradise" near Butler Lake, FL, routinely sold marijuana and marijuana e-cigarettes, which are

illegal in the state.  Surveillance evidence confirmed this suspicion, and the owner was arrested

following a raid.[26]

47.     The Smoke Haven Smoke Shop in Lake County was closed after a search warrant

confirmed that it was selling illegal drugs to minors.[27]

48.     In this environment, it is not surprising that many Florida smoke shops sell N-O

Products, knowing their customers would use them for inhalation, leading to catastrophic

consequences.

49.     In the words of a recent report in *The Atlantic*, "culinary professionals generally

don't shop for equipment at stores with names like Puff N Stuff or Condom Sense. The true

clientele inhales the gas to get high. A dangerous and technically illegal drug, nitrous oxide is

widely available as long as everyone pretends it's destined for use as a food product."[28]

---

[24] Volusia Sheriff, "17 Stores Sell Alcohol Or Nicotine Product to Undercover, Underage Buyer" (February 15, 2022), https://www.volusiasheriff.gov/news/volusia-county-sheriff/17-stores-sell-alcohol-or-nicotine-product-to-undercover-underage-buyer.stml (last accessed on January 19, 2025).
[25] Kimberly Kuizon, "Stores cited for selling vape products without checking ID" (October 17, 2019), https://www.fox13news.com/news/stores-cited-for-selling-vape-products-without-checking-id (last accessed on January 19, 2025).
[26] 2First.ai, "Illegal Drug Sales to Minors at Florida E-Cigarette Store" (October 8, 2023), https://www.2firsts.com/news/illegal-drug-sales-to-minors-at-florida-e-cigarette-store (last accessed on January 19, 2025).
[27] ActionNewsJac.xom News Staff, "Union County vape shop closed after search warrant served for selling illegal drugs to minors" (October 6, 2023), https://www.actionnewsjax.com/news/local/union-county-vape-shop-closed-by-sheriffs-office-selling-illegal-drugs/7JEJ66IY3ZG53B6MHXHNM6KMWE/ (last accessed on January 19, 2025).
[28] Amogh Dimri, "The Illegal Drug at Every Corner Store", *The Atlantic*, (February 3, 2025), https://www.theatlantic.com/ideas/archive/2025/02/nitrous-oxide-drug-loophole/681532/?gift=BcDsg0-eifNnEYjlx9oWdv3HE6caBHw2FJvC2-4OFw8 (last accessed on February 4, 2025).

**Margaret's Tragic Death Was Caused by N-O Products**

50.     The late Margaret became tragically addicted to N-O Products as a result of Manufacturer Defendants' social media campaign.  She was also enticed to use these products by Manufacturer Defendants' advertising and packaging which portrayed them as safe and harmless. In 2024, she repeatedly purchased N-O Products manufactured by Manufacturer Defendants from each of the Smoke Shop Defendants.

51.     Margaret became addicted to Manufacturer Defendants' N-O Products. In the last months of her life, she spent many hours in Smoke Shop Defendants' parking lots while consuming these products.  Although they were each aware of frequent and repeated purchases, and some had even criticized her for littering their parking lot with N-O Product cartridges, Smoke Shop Defendants never once prevented her from buying N-O Products.

52.     As a result of her addiction to N-O Products, and their severe and adverse health impacts, Margaret passed away on November 22, 2024 behind a smoke shop in Orange County, Florida after inhaling N-O Products purchased from the same smoke shop.

## CLASS ACTION ALLEGATIONS – PLAINTIFFS CLASS

53.     Plaintiff brings this class action under the Florida Rules of Civil Procedure 1.220 individually and on behalf of all members of the following class, including the subclass:

> All individuals residing in the United States who purchased products manufactured by Manufacturer Defendants and containing nitrous oxide from smoke shops, meaning retailers whose main purpose is the sale of smoking and/or tobacco products, including, but not limited to, cigars, pipe tobacco, and smoking accessories for off-premises consumption at a retail establishment that either devotes a majority of its total floor area to smoking, drug, and/or tobacco paraphernalia including electronic cigarettes, electronic vapor devices, and sales nitrous oxide products. ("Class")

> All individuals residing in Florida who purchased products manufactured by Manufacturer Defendants and containing nitrous oxide from smoke shops, meaning retailers whose main purpose is the sale of smoking and/or tobacco products, including,

but not limited to, cigars, pipe tobacco, and smoking accessories for off-premises consumption at a retail establishment that either devotes a majority of its total floor area to smoking, drug, and/or tobacco paraphernalia including electronic cigarettes, electronic vapor devices, and sales nitrous oxide products. ("Florida Subclass")

54.    Excluded from the Plaintiff Class are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any of Defendants' officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

55.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on class-wide basis using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

a.    **Numerosity**. Plaintiff is a representative of the Class, consisting of tens of thousands of consumers who purchased N-O Products at smoke shops, far too many to join in a single action;

b.    **Ascertainability**. Class Members are readily identifiable from information in Defendants' possession, custody, and control.  Defendants have information regarding who purchased N-O Products.  Class Members also have receipts and bank card statements to confirm such purchases;

c.    **Typicality**. Plaintiff's claims are typical of class claims as each arises from the same misconduct (selling N-O Products through smoke shops).

d.    **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. Plaintiff's interests do not conflict with the Class's interests, and Plaintiff has retained counsel experienced in complex class action litigation and

consumer protection to prosecute this action on the Class's behalf, including as

lead counsel.

e. **Commonality**. Plaintiff's and Class Members' claims raise predominantly

common fact and legal questions that a class wide proceeding can answer for the

Class. Indeed, it will be necessary to answer the following questions:

    i.   Whether Manufacturer Defendants' sale of N-O Products through smoke

        shops is unconscionable, unfair or unlawful;

    ii.   Whether Manufacturer Defendants were unjustly enriched by the sale of

        N-O Products through smoke shops;

    iii.   Whether the sale of N-O Products through smoke shops caused Plaintiff

        and Class Members harm;

    iv.   Whether Plaintiff and Class Members are entitled to damages as against

        Manufacturer Defendants;

    v.   Whether Plaintiff and Class Members are entitled to injunctive relief as

        against Smoke Shop Defendants and Defendant Class (as defined below).

56.    In short, common questions of law and fact predominate over any individualized

questions, and a class action is superior to individual litigation or any other available method

to fairly and efficiently adjudicate the controversy. The damages available to individual

plaintiffs are insufficient to make individual lawsuits economically feasible.

## CLASS ACTION ALLEGATIONS – DEFENDANTS' CLASS

57.    Plaintiff brings this class action under the Florida Rules of Civil Procedure

1.220 and seeks the certification of the following defendant class ("Defendant Class"):

All smoke shops, meaning retailers whose main purpose is the sale of smoking and/or tobacco products, including, but not limited to, cigars, pipe tobacco, and smoking accessories for off-premises consumption at a retail establishment that either devotes a majority of its total floor area to smoking, drug, and/or tobacco paraphernalia including electronic cigarettes, electronic vapor devices, and sales nitrous oxide products, located in the United States that sold products containing nitrous oxide and manufactured by Manufacturer Defendants.

58.     Certification of Defendant Class is appropriate in respect of the claim for declaratory and injunctive relief because the Defendant Class has acted or refused to act on grounds that apply generally to the class, so that injunctive relief or corresponding declaratory relief is appropriate.  Smoke Shop Defendants can prove the elements of their defenses on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.  Further, inconsistent or varying adjudications with respect to individual Defendant Class members would establish incompatible standards of conduct and preclude effective enforcement of any future injunctive relief:

      a.    **Numerosity**. Smoke Shop Defendants are representative of the Defendant Class, consisting of thousands of members, far too many to join in a single action;

      b.    **Ascertainability**. Members of the Defendant Class are easily identifiable. Defendants have information regarding which stores sold N-O Products manufactured by Manufacturer Defendants to the public;

      c.    **Typicality**. Smoke Shop Defendants' defenses are typical of Defendant Class' defenses, as each arises from the same misconduct (selling N-O Products to the public).

      d.    **Adequacy**. Smoke Shop Defendants will fairly and adequately protect the proposed Defendant Class's interests. Smoke Shop Defendants' interests do not conflict with the Defendant Class's interests.

e. **Commonality**. Smoke Shop Defendants' and Defendant Class' defenses raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following question: Whether Smoke Shop Defendants and members of the Defendant Class ought to be enjoined from selling N-O Products through injunctive relief.

## CAUSES OF ACTION

## COUNT I – STRICT LIABILITY

### (On Behalf of Plaintiff and the Plaintiff Class)

59.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1-58 as if fully set forth below.

60.     This claim is brought against Manufacturer Defendants.

61.     At all times material to this action, Defendants were responsible for designing, formulating, testing, importing, manufacturing, inspecting, packaging, marketing, distributing, supplying and/or selling N-O Products to Plaintiff and Class Members.

62.     As described herein, N-O Products possessed a defect in design in that the volume in which N-O Products were sold was not practical for cooking but could cause, and did cause, substantial bodily harm and death to Plaintiff and Class Members.

63.     N-O Products, as designed, present an unreasonable risk of injury and substantial likelihood of harm to consumers acting foreseeably and reasonably under the circumstances.

64.     Specifically, N-O Products are sold in large packages which are labelled and decorated so as to encourage their use through inhalation, and distributed through smoke shops, to further facilitate their use as recreational drugs, rather than cooking utensils.  This presents a mortal danger to consumers' health.

65.     Plaintiff and Class Members were not aware of the dangers associated with the use N-O Products.  Plaintiff's and Class Members' injuries occurred in a manner that was reasonably foreseeable to Manufacture Defendants, and unforeseeable to Plaintiff and Class Members.

66.     The defective design of N-O Products, and their sale through smoke shops, was a substantial factor in causing injuries to Plaintiff and Class Members.

67.     Manufacturer Defendants breached their duty to consumers when they designed, marketed and sold N-O Products in a way that was not reasonably safe.

68.     Plaintiff and Class Members suffered the injuries alleged herein as a direct and proximate result of using N-O Products, which were defective and unreasonably dangerous.  Accordingly, Manufacturer Defendants are strictly liable to Plaintiff and Class Members.

**COUNT II – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, Fla. Stat. § 501.201, *et seq.* ("FDUTPA")**
**(On Behalf of Plaintiff and the Florida Subclass)**

69.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1-58 as if fully set forth below.

70.     This claim is brought against Manufacturer Defendants only.

71.     The FDUPTA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce hereby declared unlawful." Fla. Stat. § 501.204(1).

72.     Fla. Stat. § 501.202 requires such claims under the FDUTPA be "construed liberally" by the courts "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."

73.     Plaintiff is the estate of an "individual[s]," are "consumer[s]" as defined by the FDUTPA. See Fla. Stat. § 501.203(7).

74.     Manufacturer Defendants offered, provided, or sold goods, namely, their N-O Products, in Florida and engaged in trade or commerce directly or indirectly affecting the consuming public, within the meaning of the FDUTPA. See Fla. Stat. § 501.203.

75.     Manufacturer Defendants' offer, provision, and sale of goods at issue in this case are "consumer transaction[s]" and Plaintiff and the Florida Subclass Members' purchases of N-O Products are the subject of those "consumer transactions." See Fla. Stat. § 501.212.

76.     Plaintiff and Florida Subclass Members paid for or otherwise availed themselves and received goods, in the form of N-O Products, from Manufacturer Defendants, primarily for personal purposes.

77.     Manufacturer Defendants' acts and practices were done in the course of Manufacturer Defendants' business of offering legal services in Florida to residents of the United States.

78.     The unfair, unconscionable, and unlawful acts and practices of Manufacturer Defendants alleged herein, and in particular, the sale and marketing of its N-O Products, emanated and arose within the State of Florida, within the scope of the FDUTPA.

79.     Manufacturer Defendants engaged in unfair, unconscionable, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of Fla. Stat. § 501.204(1), including but not limited to the following:

       a.    Failing to adequately inform consumers that its N-O Products (i) were highly addictive; (ii) contained higher doses of nitrous oxide than deemed medically safe; and (iii) posed unreasonable risks of substantial bodily injury and death;

b. Marketing its N-O Products to minors;

c. Misbranding and adulterating N-O Products as food products when they are in fact addictive drugs sold for inhalation;

d. Selling N-O Products in large canisters, rendering them unfit for human use; and

e. Marketing and distributing its N-O Products through smoke shops.

80. Accordingly, Plaintiff and Class Members are entitled to damages from Manufacturer Defendants, pursuant to FDUTPA.

## COUNT III – UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Plaintiff Class)

81. Plaintiff realleges and incorporates the allegations contained in paragraphs 1-58 as if fully set forth below.

82. Plaintiff pleads this claim separately and in the alternative to its other claims, as without such claims they would have no adequate legal remedy.

83. This claim is brought against Manufacturer Defendants.

84. Manufacturer Defendants created and implemented a scheme to create a market for N-O Products and substantially increase sales of their N-O Products through a pervasive pattern of false and misleading statements and omissions. Manufacturer Defendants' plan was to portray N-O Products as cool and safe, with a particular emphasis on appealing to minors, while misrepresenting or omitting key facts concerning N-O Products' addictiveness, and significant risks of substantial physical injury and death from using these products.

85. Manufacturer Defendants were unjustly enriched as a result of their wrongful conduct, including through the false and misleading advertisements and omissions, including on social media, regarding the facts that N-O Products: (i) were highly addictive; (ii) contained

higher doses of nitrous oxide than deemed medically safe; and (iii) posed unreasonable risks of substantial bodily injury and death.

86.     Manufacturer Defendants were also unjustly enriched through their scheme of marketing its N-O Products to minors.

87.     Manufacturer Defendants requested and received a measurable benefit at the expense of Plaintiff and Class Members in the form of payment for Manufacturer Defendants' N-O Products.

88.     Manufacturer Defendants appreciated, recognized, and chose to accept the monetary benefits Plaintiff and Class Members conferred onto them, to Plaintiff's and Class Members' detriment. These benefits were the expected result of Manufacturer Defendants acting in their pecuniary interest at the expense of their customers.

89.     There is no justification for Manufacturer Defendants' enrichment. It would be inequitable, unconscionable, and unjust for Manufacturer Defendants to be permitted to retain these benefits because the benefits were procured as a result of their wrongful conduct.

90.     Plaintiff and Class Members are entitled to restitution of the benefits Manufacturer Defendants unjustly retained and/or any amounts necessary to return Plaintiff and Class Members to the position they occupied prior to dealing with Manufacturer Defendants.

<u>**COUNT IV – DECLARATORY AND INJUNCTIVE RELIEF**</u>
**(On Behalf of Plaintiff and the Class, as against Smoke Shop Class)**

91.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1-58 as if fully set forth below.

92.     This claim is asserted against Smoke Shop Defendants and the putative Smoke Shop Class only.

93.     Members of the putative Smoke Shop Class sell N-O Products which, as detailed above, sell N-O Products on their premises, despite these products posing an immediate and severe risk to the public.

94.     There is no lawful justification for selling N-O Products, which are ostensibly cooking accessories, at smoke shops.  Sales at smoke shops are unequivocally aimed at consumers who will use N-O Products for inhalation, will get addicted, and suffer severe physical harm or death.

95.     Accordingly, Plaintiff seeks an Order to preliminarily and permanently enjoin members of the putative Smoke Shop Class from selling N-O Products on their premises or online.

## **PRAYER FOR RELIEF**

96.     WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, demands a jury trial on all claims so triable, and requests the following relief:

a.  An Order certifying this action as a class action and appointing Plaintiff as Class representative, and the undersigned as Class Counsel;

b.  An Order certifying the Smoke Shop Class as a defendant class, and appointing Smoke Shop Defendants as Defendant Class representatives;

c.   A mandatory injunction prohibiting members of the Defendant Class from selling N-O Products on their premises or online;

d.  An award of damages, including actual, nominal, consequential, and punitive damages, as allowed by law in an amount to be determined, as against Manufacturer Defendants;

e.  An award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f.  An award of pre- and post-judgment interest, costs, attorneys' fees, expenses, and interest as permitted by law;

g.  Granting the Plaintiff and Class Members leave to amend this Complaint to conform to the evidence produced at trial;

h.  For all other Orders, findings, and determinations identified and sought in this Complaint; and

i.  Such other and further relief as this court may deem just and proper.

Dated: February 6, 2025                    Respectfully Submitted,

                                           */s/   John A. Yanchunis*

                                           Mike Morgan
                                           Florida Bar #: 62229
                                           mmorgan@forthepeople.com
                                           John A. Yanchunis
                                           Florida Bar #: 324681
                                           JYanchunis@forthepeople.com
                                           James D. Young
                                           Florida Bar #: 567507
                                           jyoung@forthepeople.com
                                           Ronald Podolny*
                                           Ronald.podolny@forthepeople.com
                                           Riya Sharma*
                                           rsharma@forthepeople.com

                                           **MORGAN & MORGAN**
                                           **COMPLEX LITIGATION GROUP**
                                           201 North Franklin Street 7th Floor
                                           Tampa, FL 33602
                                           T: (813) 223-5505
                                           F: (813) 223-5402

                                           *Pro hac vice forthcoming*
                                           **Counsel for Plaintiffs and the Class**