UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No. 6:25-cv-00551

KATHLEEN DIAL, AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF MARGARE P. CALDWELL,
individually and on behalf of all others
similarly situated

        Plaintiff,

vs.

FUEGO SMOKE & VAPE, LLC, et al.

                              /

**<u>DEFENDANTS, MANKI INVESTMENTS LLC, HYWAZE LLC, AND A&A
SMOKE SHOP LLC'S MOTION TO DISMISS COUNT IV OF CLASS
ACTION COMPLAINT AND RESPONSE IN OPPOSITION TO CLASS
CERTIFICATION REQUEST AS IT RELATES TO COUNT IV [ECF 1-2]</u>**

Defendants, Manki Investments LLC, Hywaze LLC, and A&A Smoke Shop

LLC (collectively, the **"Defendants"**), by and through their undersigned counsel,

and pursuant to Federal Rules of Civil Procedure 12 and 23, hereby file this Motion

to Dismiss Count IV of Class Action Complaint [ECF 1-2] and Response in

Opposition to Class Certification Request as it Relates to Count IV, and as grounds

therefor state:

1.     On February 6, 2025, Plaintiff, Kathleen Dial, as personal

representative of the Estate of Margaret P. Caldwell (**"Plaintiff"**), filed a Complaint

against, among others, the Defendants in Circuit Court of the Ninth Judicial Circuit in and for Orange County [ECF 1-2].

2.    On March 27, 2025, Defendant, Galaxy Gas, LLC, filed a Notice of Removal of the instant action to this Court [ECF 1].

3.    The named Defendants consist of the following two (2) sets of Defendants: the "Manufacturer Defendants" and the "Smoke Shop Defendants." *See* ECF-1-2 at ¶1.

4.    The Defendants represented by undersigned counsel are part of the group referred to in the Complaint as the "Smoke Shop Defendants."

5.    The Plaintiff seeks to certify a bilateral class action lawsuit individually and on behalf of all members of a Plaintiff Class, including the Subclass, defined in the Complaint in paragraph 53.

6.    Plaintiff also seeks the certification of a Defendant Class, defined in the Complaint at paragraph 57.

7.    The only claim raised in the Complaint against the Smoke Shop Defendants is Count IV for Declaratory and Injunctive Relief.

**Motion to Dismiss Count IV**

8.    For the reasons that follow, the Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) because Plaintiff lacks standing to seek declaratory and injunctive relief.

9.    The Complaint should also be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because Plaintiff failed to state a cause of action upon which relief may be granted.

10.    Finally, the "political question" doctrine bars Plaintiff's claim for declaratory and injunctive relief that would prohibit smoke shops nationwide from selling N-O products.

**Response in Opposition to Plaintiff's Class Certification Request**

11.    As Plaintiff is the only named class member, and she lacks standing to pursue injunctive and declaratory relief, the putative class members necessarily lack standing to seek such relief.

12.    Should this Court wish to reach the merits of Plaintiff's putative class, she cannot demonstrate the "typicality" or "commonality" prerequisites  of Rule 23(a). Nor has she demonstrated the "typicality" or "commonality" prerequisites with respect to the putative Defendant class of Smoke Shop retailers.

13.    Finally, the putative defendant class cannot be certified because Plaintiff does not have a claim against each putative member, and there is no "juridical link" bonding each member.

**MEMORANDUM OF LAW**

I.    **Introduction**.

This litigation arises out of the "regulatory vacuum" pertaining to the sale of nitrous oxide ("N-O") products.[1] In the absence of legislation or administrative rules regulating the sale of such products, Plaintiff seeks injunctive and declaratory relief "preliminarily and permanently enjoin[ing]" Defendants, and a putative "smoke shop defendant" class "from selling N-O Products on their premises or online." *See* ECF 1-2 at ¶ 95. As pled, Plaintiff's claim fails to state a cause of action as a result of which Count IV should be dismissed, and class certification should be denied.

## II.    Argument.

### A.    Plaintiff lacks standing to bring this class action lawsuit as a result of which this Court lacks subject matter jurisdiction and the action must be dismissed pursuant to Rule 12(b)(1), F.R.C.P.

Because standing is jurisdictional, a motion to dismiss for lack of standing is treated as a motion under Rule 12(b)(1), Fed.R.Civ.P., for dismissal due to a lack of subject matter jurisdiction. *Hall v. Xanadu Marketing, Inc.,* 682 F.Supp.3d 1278, 1281 (N.D.Ga. July 6, 2023)(citation omitted). Thus, standing is the threshold question in every federal case, determining the power of the Court to entertain the suit." *Id.* at 1282 (citation omitted). Article III of the United States Constitution

---

[1] The "regulatory vacuum" is described in an article cited in footnote 13 of Plaintiff's Complaint. *See* ECF 1-2 at ¶ 35, n.13 (citing Amogh Dimri, *The Illegal Drug at Every Corner Store*, The Atlantic (Feb. 3, 2025), https://www.theatlantic.com/ideas/archive/2025/02/nitrous-oxide-drug-loophole/681532/ (last accessed on Apr. 15, 2025)). The Federal Rules of Civil Procedure "provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' Fed.R.Civ.P. 10(c), including for ruling on a motion to dismiss." *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1303 (11th Cir. 2022)(quoting *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) (collecting cases)).

expressly limits federal jurisdiction to "cases and controversies" and does not permit federal courts to issue advisory opinions. *Id.* (citations omitted). To have a case or controversy, a litigant must establish that he [or she] has standing," *id.* (citation omitted), which requires the litigant to show the following: (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision. *Id.* (citation omitted). Where a case is in the pleading stage, the Plaintiff must clearly allege facts demonstrating each of the foregoing elements. *Id.* (citation omitted). Importantly, "an injury in law is *not* an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (emphasis added). Furthermore, "[t]he burden of proof to establish the propriety of class certification rests with the advocate of the class." *Davis v. Mar-Jac Poultry LLC,* 2021 WL 2556012 at *8 (N.D.Ala Mar. 30, 2021)(quoting *Vega v. T-Mobile USA, Inc.* 564 F.3d 1256, 1265 (11th Cir. 2009)(quoting *Valley Drug Co. v. Geneva Pharms, Inc.,* 350 F.3d 1181, 1187 (11th Cir. 2003)).

In the instant case, Plaintiff seeks declaratory and injunctive relief against the Defendants in Count IV. "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer **injury in the future**." *M.R. v. Bd. of School Comm'rs of Mobile Cty,* 286 F.R.D. 510, 514 (S.D.Ala. 2012)(emphasis

added)(quoting *Malowney v. Fed. Collection Dep. Gp.,* 193 F.3d 1342, 1346 (11th Cir. 1999)); *see also, Hange v. City of Mansfield, Ohio*, 257 F. App'x 887, 891 (6th Cir. 2007)(recognizing that standing to seek declaratory or injunctive relief "depends on the likelihood of *future* harm.")(citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (emphasis added)). Thus, a prayer of injunctive and declaratory relief requires this Court to assess "whether the Plaintiff has sufficiently shown a real and immediate threat of future harm.... [P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." 286 F.R.D. at 514-15 (quoting *Elend v. Basham,* 471 F.3d 1199, 1207 (11th Cir. 2006)).

Plaintiff lacks standing to seek injunctive and declaratory relief against Defendants because the Complaint is devoid of any allegation that there is a "real and immediate threat" of future injury, or a "sufficient likelihood that [she] will be affected by the allegedly unlawful conduct in the future." To possess such standing, Plaintiff would have to allege that she is in "immediate danger" of suffering the same injury previously suffered. *Volinsky v. Lenovo (United States) Inc.*, 2024 WL 1299315, at *4 (M.D.Fla. Mar. 27, 2024). But she has not made that allegation here. It "beggars belief—knowing what [Plaintiff] claims to [know] about" the alleged danger of N-O products "that [Plaintiff] is in immediate danger of" suffering the same injury. *See id.* Nor could it be reasonably plead that Plaintiff is in immediate danger of suffering the same injury because, sadly, the injury alleged is death.

Further, Plaintiff does not allege that she suffered any harm outside of Florida, nor that she suffers a threat of future harm. "Because [Plaintiff] cannot transform [her alleged] Florida injury into one of another state, [she] lacks standing to assert the multistate claims alleged" in Count IV, "either individually or as a class representative." *Id.*

Because Plaintiff lacks standing to seek declaratory and injunctive relief, Count IV of Plaintiff's Class Action Complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

**B. <u>Plaintiff has failed to state a claim upon which relief can be granted as a result of which Count IV must be dismissed pursuant to Rule 12(b)(6), F.R.C.P.</u>**

**1. <u>Plaintiff's Complaint fails to state a cause of action for injunctive relief.</u>**

Plaintiff's sole claim against Defendants under Count IV is for declaratory and injunctive relief wherein she "seeks an Order to preliminarily and permanently enjoin members of the putative Smoke Shop Class from selling N-O products on their premises or online." *See* ECF 1-2 at ¶95. Even accepting all allegations of the Complaint as true and viewing them in the light most favorable to Plaintiff, Plaintiff has not come close to alleging the facts and elements necessary to state a claim for declaratory and injunctive relief. *See Johnson v. Publix Super Markets, Inc.,* 2015 WL 13388564 * 2 (S.D.Fla. March 10, 2015)("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'")(citations omitted).

First, whether preliminary or permanent, an injunction "must be based upon a cause of action, such as a constitutional violation, a trespass, or a nuisance." *Alabama v. U.S. Army Corps of Engineers,* 424 F.3d 1117, 1127 (11th Cir. 2005). As stated by the Eleventh Circuit:

> "There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed.R.Civ.P. 12(b)(6) (failure to state a claim)."… An injunction is a "remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise."… However, because it is an extraordinary remedy, it is available not simply when the legal right asserted has been infringed, but only when that legal right has been infringed by an injury for which there is no adequate legal remedy and which will result in irreparable injury if the injunction does not issue. … Thus, to obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; and (3) irreparable harm will result if the Court does not order injunctive relief.

*Id.* at 1127-28 (internal citations omitted).

In the instant case, it is clear that Plaintiff's claim for injunctive relief is a standalone cause of action as there is no underlying claim against the Defendants entitling Plaintiff to injunctive relief. *Lanzone v. Boggs,* 2018 WL 11436537 *2 (S.D.Fla. June 12, 2018)(citing 424 F.3d at 1127)("an injunction is not a standalone cause of action; it is a remedy for which there must be an underlying cause of action

entitling the plaintiff to such relief."). Thus, no injunctive relief is available to a plaintiff who lacks a cognizable, meritorious claim. *Fontaine v. Inch,* 2021 WL 217073 (S.D.Fla. Jan 21, 2021)(citing, *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1097 n.5 (11th Cir. 2004)).

Having failed to allege a proper basis for injunctive relief, Count IV should be dismissed for failure to state a cause of action.

### 2. <u>Plaintiff's Complaint fails to state a cause of action for declaratory relief.</u>

Although Count IV is titled "Declaratory and Injunctive Relief," Plaintiff has failed to state any claim upon which she seeks any declaration from this Court. Nor are there any allegations that would satisfy either Ch. 86, Fla. Stat., Florida's Declaratory Judgment Act, or the Federal Declaratory Judgment Act, 28 U.S.C. §2201. Regardless of whether the claim arises under Florida or Federal law, each element is not materially different. *Quevedo v. Lexington Ins. Co.,* 2021 WL 950859 *2 (S.D.Fla. March 11, 2021). Thus, Florida law requires an individual seeking declaratory relief to show the following:

> [That] there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest are all before the Court by proper process or class representation and that the relief sought is not merely the

> giving of legal advice by the courts or the answer to questions propounded from curiosity. These elements are necessary in order to maintain the status of the proceeding as being judicial in nature and therefore within the constitutional powers of the courts.

*Trianon Condo. Ass'n, Inc. v. QBE Ins. Corp.,* 741 F.Supp.2d 1327, 1330, 1331 (quoting *Santa Rosa Cty. v. Admin. Comm'n,* 661 So.2d 1190, 1192-93 (Fla. 1995). Furthermore, the Federal Declaratory Judgment Act explicitly requires that an "actual controversy" exist before a court may decide whether to grant declaratory relief. *Shaunnessy v. Monteris Medical, Inc.,* 554 F.Supp.2d 1321, 1327 (M.D.Fla. 2008)(citing U.S.C. §2201).

In the instant case, not only has Plaintiff failed to allege any actual case or controversy to support declaratory relief, but she has failed to allege any facts or elements to support her claim for declaratory relief. Accordingly, as to any claim for declaratory relief, Count IV fails to state a cause of action and must be dismissed.

## C. **Plaintiff's lack of standing to seek declaratory and injunctive relief means that the putative plaintiff class and subclass members also lack standing.**

As argued in section II.A., *supra.,* Plaintiff lacks standing to pursue the declaratory and injunctive relief claim in Count IV of her Class Action Complaint. A named plaintiff's standing "is a threshold question in any class action case; thus, 'any analysis of class certification must begin with the issue of standing.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 682 (S.D. Fla. 2013)

(quoting *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987)) (citation omitted). For class certification, "the named plaintiffs *must* have standing . . . ." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (cleaned up) (emphasis added).

For purposes of brevity, Defendants will not repeat its standing argument *supra*. It suffices to say that Plaintiff lacks standing because she has not alleged a sufficient likelihood of future harm or a real or immediate threat of such harm. *Koziara v. City of Casselberry,* 392 F.3d 1302, 1306 (11th Cir. 2004). And "because [Plaintiff] lacks standing to seek injunctive relief and is the only named plaintiff, there is no standing for the putative classes to seek such relief either." *Volinsky*, 2024 WL 1299315, at *4 (citations omitted).

**D. The "political question" doctrine acts as a jurisdictional bar to Plaintiff's claim for declaratory and injunctive relief.**

As acknowledged by an article cited in Plaintiff's Complaint, *see* ECF 1-2 at ¶35 n. 13, there is a "regulatory vacuum" regarding the sale of over-the-counter N-O products. Dimri, *supra.,* at n.2. While some states limit the sale of N-O products to those under 18 or 21 years old, and Louisiana recently enacted legislation making the sale of N-O "presumptively illegal," the article recognizes that "legislative efforts have yet to deliver significant change." *Id.* In her request for injunctive and declaratory relief, Plaintiff seeks to use litigation as a substitute for regulation. But in so doing, Plaintiff poses a political question that this Court, and indeed any court,

is incapable of resolving: "Whether Smoke Shop Defendants and members of the Defendant Class *ought* to be enjoined from selling N-O Products through injunctive relief." *See* ECF 1-2 at ¶ 58e (emphasis added). Dismissal is therefore appropriate.

The "political question" doctrine "protects the separation of powers and prevents federal courts from overstepping their constitutionally defined role." *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1357 (11th Cir. 2007) (citations omitted). The Supreme Court has set out "the six indicia of a political question" as follows:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* at 1357-58 (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)). A case "may be dismissed on political question grounds if—and only if—the case will require the court to decide a question possessing one of these six characteristics." *Id.* at 1358 (citations omitted).

The judiciary has "the authority to interpret the law," but it "possess[es] neither the expertise nor the prerogative to make policy judgments." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012). These decisions "are entrusted to

our Nation's *elected leaders*, who can be *thrown out of office* if the people disagree with them." *Id.* (emphases added). It is not the judiciary's role "to protect the people from the consequences of their political choices." *Id.*

As noted in Plaintiff's Complaint, the question she would have this Court answer is whether the Defendant Class "ought to be enjoined from selling N-O Products through injunctive relief." *See* ECF 1-2 at ¶ 58e. This is an inherently political question, and its resolution requires a policy judgment. And when courts are "given no standard by which to adjudicate a dispute, or cannot resolve a dispute in the absence of a yet-unmade policy determination charged to a political branch, resolution of the suit is beyond the judicial role envisioned by Article III." *Zivotofsky v. Clinton*, 566 U.S. 189, 204 (2012) (Sotomayor, J., concurring) (citations omitted). The second and third *Baker* factors, discussed below, "reflect circumstances" such as this "in which a dispute calls for decisionmaking beyond courts' competence." *Id.* at 203.

As to the second *Baker* factor, there are no judicially discoverable and manageable standards for answering this question. On some occasions, tort law may provide "clear and well-settled rules on which the district court can easily rely." *Linder v. Portocarrero*, 963 F.2d 332, 337 (11th Cir. 1992) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 49 (2d Cir. 1991)) (quotation marks omitted). But this is not a case where "flexible standards of negligence law are well-equipped

to handle varying fact situations." *McMahon*, 502 F.3d at 1364. Negligence law would already provide for certain common law duties. Instead, Plaintiff would have this Court determine that the Defendant Class *should be* enjoined from selling N-O products *period*. There is a vast distinction between a court using tort law to set the boundaries of a legal duty, and a court declaring that certain products should not be sold by certain businesses with no exception. Any judicial determination of whether the Defendant Class *ought* to be enjoined from selling N-O products "would be an 'unmoored determination' of the sort of characteristic of a political question beyond the competence of federal courts." *Rucho v. Common Cause*, 588 U.S. 684, 707 (2019) (quoting *Zivotofsky v. Clinton*, 566 U.S. 189, 196 (2012)). There are "no legal standards discernible in the Constitution for making such standards, let alone limited and precise standards that are clear, manageable, and politically neutral." *Id.*

As to the third *Baker* factor, this Court could not answer Plaintiff's question "without an initial policy determination of a kind clearly for nonjudicial discretion." Whether putative Defendant Class members *ought* to be prohibited from selling N-O products is inherently a policy determination. Plaintiff does not allege that putative Defendant Class members are violating any federal law or regulation by selling N-O products. Yet Plaintiff would ask this Court to determine that nonetheless, they *should* be prohibited from doing so *without exception*. This Court would essentially have to take on the role of a legislative body in order to balance the reasons for

prohibiting, and not prohibiting, putative Defendant Class members from selling N-O products. Such policy considerations are "of a kind clearly for *nonjudicial* discretion." Even absent congressional regulation, it would raise significant federalism concerns were a single district court to enjoin Defendant Class members *in every state* from engaging in commerce that appears legal in most states.

Finally, as to the fourth *Baker* factor, it would be impossible for this Court to undertake independent resolution of Plaintiff's question "without expressing lack of the respect due coordinate branches of government." Specifically, it is for the legislative branch, *not* the judicial branch, to decide whether putative Defendant Class members *ought* to be prohibited from selling N-O products nationwide. The political question doctrine is rooted in the separation of powers.[2] *See McMahon*, 502 F.3d at 1357 (noting that the political question doctrine "protects the separation of powers and prevents federal courts from overstepping their constitutionally defined role." (citations omitted)).

Plaintiff's request for injunctive and declaratory relief seeks to prohibit smoke shops nationwide from selling N-O products. Such sweeping relief goes far beyond what any court can offer Plaintiff, especially absent allegations that putative Defendant Class members' selling of such products violates a common regulatory or

---

[2] Though a court might reasonably be called upon to determine constitutionality of any prohibition, such as its consistency with the Commerce Clause, it would not be that court's role to determine whether such a prohibition "ought" to be brought into existence in the first instance.

statutory scheme. The key question, as framed by Plaintiff, is whether putative Defendant Class members "*ought* to be enjoined from selling N-O Products through injunctive relief." *See* ECF 1-2 at ¶58e (emphasis added). Courts are ill-suited to answer such an inherently political question. Because Count IV of Plaintiff's Complaint requires this Court's resolution of a political question, "it must be dismissed for lack of jurisdiction." *McMahon*, 502 F.3d at 1358 (citations omitted).

### E. <u>**Plaintiff cannot show that the requirements of Fed.R.Civ.P. 23 will be met.**</u>

Because Plaintiff lacks standing to pursue her claims, so do the putative class members. *Volinsky*, 2024 WL 1299315, at *4. This Court's analysis can stop there. But should this matter proceed beyond the motion to dismiss stage of litigation, several issues warrant denial of certification.[3] The proponent of a class must show that each class satisfies each requirement of Rule 23(a) *and* one of Rule 23(b) 's three requirements. *Vega*, 564 F.3d at 165. Plaintiff cannot do so here.

### 1. <u>**Plaintiff Cannot Satisfy Rule 23(a) 's Prerequisites for Certification.**</u>

Rule 23(a) has four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Wal-Mart Stores, Inc. v. Dukes*, 564

---

[3] As a threshold matter, Plaintiff must establish that the proposed Plaintiff Class and Subclass, and Defendant Class, are each "adequately defined and clearly ascertainable . . . ." *Little v. T-Mobile USA, Inc.*, 692 F.3d 1302, 1304 (11th Cir. 2012). Despite Plaintiff's conclusory allegations that her proposed classes are ascertainable, this proposition is far from clear. Defendants reserve their right to address this issue further in future filings should such become necessary.

U.S. 338, 345 (2011) (quoting Fed. R. Civ. P. 23(a)). Because a class action is an "exception to the usual rule" that litigation is conducted on behalf of the named parties only, the party seeking to certify a class "must affirmatively demonstrate his compliance" with Rule 23. *Shuford v. Conway,* 326 F.R.D. 321, 328 (N.D.Ga. 2018)(quoting *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013); citing *Wal-Mart Stores,* , 564 U.S. at 350)). "A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." *Vega,* 564 F.3d at 1266 (citations omitted). The party seeking class certification bears the burden to show by a preponderance of the evidence that the requirements of Rule 23 are met. *Shuford,* 326 F.R.D. at 328 (citation omitted) "A district court that has doubts about whether the requirements of Rule 23 have been met should refuse certification until they have been met." *Id.* (citation omitted); *see also, Brown v. Electrolux Home Products, Inc.,* 817 F.3d 1225 (11th Cir. 2016)("All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation.")(citations omitted).

a. **Plaintiff's putative Plaintiff Class and Subclass lack "typicality" and "commonality."**

Plaintiff cannot prove that her alleged Class and Subclass satisfy Rule 23(a)'s typicality and commonality requirements. Those requirements "tend to merge" because both go to whether a class action is "economical" and whether the named Plaintiff can "fairly and adequately protect[]" the absent members' interests. *Gen.*

*Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).[4]

As an initial matter, "there cannot be adequate typicality … unless the named representative has individual standing . . . ." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2002). As argued *supra.,* Plaintiff lacks standing to seek declaratory and injunctive relief, meaning Rule 23(a) 's typicality prerequisite cannot be satisfied. Further, Plaintiff has not alleged that she and the putative Plaintiff Class and Subclass members suffered **"the same injury"** (required by the commonality requirement as argued below) because membership in the Plaintiff Class and Subclass hinges on the mere purchase of N-O products from a putative Defendant Class member. Assuming that Plaintiff's alleged injury—Decedent's death, allegedly caused by the unlawful sale and Decedent's subsequent consumption of N-O products—could confer standing to seek *prospective* relief (it cannot), this cannot be "the same injury" as the mere purchase of N-O products without more.

As noted, "commonality" requires the Plaintiff to "demonstrate that the class members 'have suffered *the same injury*.'" *Wal-Mart*, 564 U.S. at 349-50 (quoting *Falcon*, 457 U.S. at 157) (emphasis added). The Supreme Court has cautioned that "any competently crafted class complaint literally raises common questions." *Id.* at 349 (cleaned up). It, therefore, explained that commonality means that the class

---

[4] These issues "also tend to merge with the adequacy-of-representation requirement," though the adequacy requirement "also raises concerns about the competency of class counsel and conflicts of interest." *Falcon*, 457 U.S. at 157 n.13. Defendants reserve their right to address the "adequacy of representation" in future filings.

members' claims "must depend on a common contention … of such a nature that it is capable of classwide resolution . . . ." *Id.* at 350. Determination of that contention's "truth or falsity" must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

In the instant case, the alleged injury is the death of the Decedent (represented by Plaintiff), which she alleges was caused by Decedent's repeated purchase of N-O Products from each of the Smoke Shop Defendants. *See* ECF 1-2 at ¶50. She further alleges that the Decedent became addicted to the N-O Products, that "she spent many hours in Smoke Shop Defendants' parking lots while consuming these products," that Defendants were "aware of [decedent's] frequent and repeated purchases, … [but] Smoke Shop Defendants never once prevented her from buying N-O Products,"[5] and as a result of her addiction to N-O Products "and their severe and adverse health impacts," Decedent passed away. *Id.* at ¶¶51-52.

Plaintiff has not alleged, nor can she allege, that injuries suffered by N-O purchasers at Defendants' stores are the same. First, Plaintiff cannot reasonably allege that Decedent's death was caused by her purchase and use of the N-O Products. In fact, her death could have been caused by any number of factors, including underlying health conditions, co-morbidities, use of other drugs or

---

[5] In a wrongful death action, the state appellate Court in *Jenkins v. W.L. Roberts, Inc.,* 851 So.2d 781, 783-84 (Fla. 1st DCA 2003) held that an automotive store owner had no legal duty to ensure that the nitrous oxide product purchased by decedent from his store would ultimately be used by him or any other unknown third party for a lawful purpose.

medications, and the list goes on. Moreover, Plaintiff cannot allege that all putative Class or Subclass Plaintiffs will suffer the **same** injury, death, from their purchase and use of the N-O Products. Accordingly, the commonality element cannot be satisfied.

"Sometimes the issues are plain enough *from the pleadings* to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim . . . ." *Falcon*, 457 U.S. at 160 (emphasis added). This is one of those cases. Even assuming that Plaintiff properly alleged an injury s*ufficient for declaratory and injunctive relief*, it could not be "the same injury" as the putative Plaintiff Class and Subclass members, because there is a vast distinction between Plaintiff's alleged injury and any "injury" caused by the mere purchase of N-O products. The Supreme Court has explained that "under Article III, an injury in law is not an injury in fact." *TransUnion*, 594 U.S. at 427. And this Court has acknowledged the Supreme Court's instruction that "Article III standing requires a concrete injury *even in the context of a statutory violation*." *Sharfman v. Precision Imaging St. Augustine LLC*, 2024 WL 4460209, at *1 (M.D. Fla. August 2, 2024) (quoting *Spokeo*, 578 U.S. at 341 (quotation marks omitted)). Even if some putative Plaintiff Class and Subclass members suffered violations of the law when sold N-O products, this would not be the "same injury" as Plaintiff's.

Because Plaintiff lacks standing to pursue injunctive and declaratory relief,

her claims cannot be "typical" as required under Rule 23(a). And because Plaintiff's alleged injury is not "the same injury" as the putative Plaintiff Class and Subclass members, both the "commonality" and "typicality" requirements of Rule 23(a) cannot be certified. Class certification should therefore be denied.

### b.  <u>**The putative Defendant class cannot be certified.**</u>

A defendant class "differs in vital respects from a plaintiff class, and … the very notion of a defendant class raises *immediate due process concerns*." *Marchwinski v. Oliver Tyrone Corp.*, 81 F.R.D. 487, 489 (W.D. Pa. 1979) (emphasis added). These concerns are "even more pronounced in *bilateral* class actions," which raise "unique and overlapping issues of standing, commonality, typicality, and adequacy of representation." *Inphynet Contracting Servs., Inc. v. Matthews*, 196 So.3d 449, 458 (Fla. 4th DCA 2016)(emphasis in original). The "issues and problems unique to defendant class certification have led courts to conclude that certification of defendant classes are, and should be, *sparingly* granted." *Id.* at 459 (emphasis added).

"Several rules" regarding certification of defendant classes have arisen, and pertinent to this motion are the following two: (1) defendant classes "will not be certified unless each named plaintiff has a colorable claim against each defendant class member"; but (2) this requirement "may be waived where the defendant members are related by a conspiracy or 'juridical link.'" *Thillens, Inc. v. Cmty.*

*Currency Exch. Ass'n of Illinois, Inc.*, 97 F.R.D. 668, 675-76 (N.D. Ill. 1983). Plaintiff does not have a colorable claim against each putative Defendant Class member—her Complaint only alleges that Decedent purchased N-O products within Florida. *See* ECF 1-2 at ¶¶ 8-15. So Plaintiff must show "conspiracy" or a "juridical link" between putative Defendant class members. But she has made no such allegations here.

A "juridical link" requires "some legal relationship which relates all defendants in a way that single resolution of the dispute is preferred to a multiplicity of similar actions," and the absence of such a link means "a defendant class fails the Article III test requiring a case or controversy . . . ." *Id.* at 676 (citations omitted). Such a link depends on the defendant members' conduct being "standardized by a common link to an agreement, contract or enforced system which acts to standardize the factual underpinnings of the claim and to insure the assertion of defenses common to the class." *Angel Music, Inc. v. ABC Sports, Inc.*, 112 F.R.D. 70, 77 (S.D.N.Y. 1986). Several federal courts "have determined that a class of defendants alleged to be violating a law do not display juridical links merely because its members are subject to a common regulatory scheme." *Inphynet*, 196 So. 3d at 461-62 (citing federal cases). And a court within this Federal Circuit has recognized that there is "no sufficient juridical link" when private parties are alleged to have violated the law. *Turpeau v. Fidelity Fin. Servs., Inc.*, 936 F. Supp. 975, 979 (N.D. Ga.

1996)(addressing allegations that defendant lenders and life insurance companies had violated a state statute, *id.* at 976).

At most, Plaintiff alleges that the named smoke shop defendants have violated Florida Statutes §§ 877.111(4) and 499.005(1)-(2). *See* ECF 1-2 at ¶¶ 91-95 (incorporating ¶¶ 38-39).[6] But this could not provide a common regulatory scheme among putative Defendant Class members because many class members are located outside of Florida, and none of them are alleged to have sold N-O products within Florida. And even if such a scheme existed, this would be insufficient to satisfy the "juridical link" requirement. *Inphynet*, 196 So. 3d at 461-62 (citing federal cases). Likewise, putative Defendant Class members—smoke shops across the country— are private actors. As explained in *Turpeau*, even if violation of a single statute was at issue here, the putative Defendant Class members "are not state officials," meaning "there is no sufficient juridical link that would permit the maintenance of this action against the named Defendants." *Turpeau*, 936 F. Supp. at 979.

Because there is no juridical link or conspiracy, Plaintiff must have "a colorable claim against each defendant class member." *Thillens*, 97 F.R.D. at 675-76. But she does not. The putative Defendant Class can, therefore, not be certified.

### III.   **Conclusion.**

---

[6] Other statutory violations alleged are contained in Count II of the Complaint, which is brought "against Manufacturer Defendants only." *See* ECF 1-2 at ¶¶ 69-80.

Based on the foregoing, this Court should dismiss the Complaint, deny class certification, and grant such other and further relief as this Court deems just and proper.

## LOCA RULE 3.01(g) CERTIFICATION

I CERTIFY that before filing this Motion, I discussed the relief requested in this Motion via Zoom conference with the opposing party. The parties cannot agree on the resolution of this Motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 26, 2026, a true and correct copy of the foregoing has been sent to all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ Kenneth L. Minerley
Kenneth L. Minerley
Fla. Bar No. 956430
Ken@minerleyfein.com
Ashley Adras
Fla. Bar No.: 119632
Primary Email:
ashley@minerleyfein.com
fileclerk@minerleyfein.com
**MINERLEY FEIN, P.A.**
*Attorneys for Defendants, Manki Investments LLC, Hywaze LLC, and A&A Smoke Shop LLC*
1200 N. Federal Highway, Suite 420
Boca Raton, FL 33432
Phone: 561/362-6699
Fax: 561/447-9884